**WICHITA COUNTY et al. v. RALEY, Tax Collector.**

No. 3379.

Court of Civil Appeals of Texas. Amarillo.
Jan. 27, 1932.

Rehearing Denied Feb. 24, 1932.

Harris & Martin, of Wichita Falls, for appellants.

T. R. Boone and E. T. Duff, both of Wichita Falls, for appellee.

HALL, C. J.

Guy C. Raley, as tax collector of Wichita county, filed this suit February 15, 1929, against the county and its commissioners' court to recover $18,642.93 and 6 per cent. interest from February 7, 1929.

The substance of the petition is that he was tax collector of Wichita county from January 1, 1923, until December 31, 1925. That from January 1, 1923, to September 21, 1923, he collected delinquent taxes to the extent of $62,231.65. That from January 1, 1923, to August 26, 1923, he collected $56,274.20. That from January 1, 1923, to August 31, 1925, he collected $372,858.37. That he turned over to the county fees which the county demanded of him, the total sum of $24,336.86, and was told by the county commissioners and county attorney while the commissioners' court was in session that he was not entitled to retain 5 per cent. on the amount of all delinquent taxes collected in addition to the amount of commissions then allowed by law during said period. That he objected to turning over the excess fees, claiming at the time that as tax collector he was entitled to retain

5 per cent. on the amount of delinquent taxes collected, in addition to the amount of commissions allowed him by law under what is known as the Fee Bill. That, however, the county, through its said representatives, informed the plaintiff that the act of the Regular Session of the Legislature for the year 1915 (Acts 1915, c. 147, § 3), giving the tax collectors 5 per cent. on the amount of all delinquent taxes collected in addition to the amount of commissions then allowed him by law, had been repealed by the Legislative Act of 1919 at the Second Called Session thereof (chapter 64) and which took effect on October 20, 1919, and said representatives denied him the right to retain the 5 per cent. That he told the commissioners' court and B. D. Sartain, the county judge, that he believed the act of 1919, which attempted to repeal the act of 1915, was invalid, and that a case was then pending to determine its validity. The said county judge and commissioners then informed him that, if he would pay the entire proceeds into the county and not retain the 5 per cent. said sum would be returned to him if the law of 1919 was declared invalid.

Relying upon the promises of the county so made, he paid the excess fees into the county treasury, which amounted to the sum of $18,-642.93, and would not have turned it over to the county but for the promises made him. That the act of 1919 has by the Supreme Court in the case of Bitter v. Bexar County (Tex. Com. App.) 11 S.W.(2d) 163, been declared unconstitutional and void. That he immediately presented to the auditor of Wichita county his claim for a refund of said 5 per cent. commissions.

He further alleges that on or about April 1st of each year he mailed to the address of each record owner of any lands or lots in Wichita county notice showing the amount of taxes delinquent against such lands and lots according to such records. That he delivered or offered to deliver to the county attorney copies of these notices, and that, if more than one year was due on any of said lands, included said additional year or years on the statements so prepared and mailed, showing the various sums due against such lands for each year.

That he furnished to the county attorney or district attorney statements showing the taxes delinquent on lands appearing of record assessed to unknown owners or in the name of persons whose correct address the tax collector was unable to ascertain. That he furnished on demand statements of taxes delinquent with reference to any lot or tract of land, and that in each of said statements so mailed he warned the delinquent taxpayer that suit would be filed within ninety days if not paid. That he furnished reliable data sufficient for the district attorney to draw his petition and upon which to base his recov-

ery in court for the delinquent taxes whenever required by the county attorney to do so.

That upon presentation of his claim for the excess fees the county auditor, E. P. Walsh, refused to approve the same; whereupon he immediately presented it to the commissioners' court and demanded that they refund his money amounting to $18,642.93, and that said court by order duly entered rejected his claim.

The defendant answered by general demurrer, several special exceptions, general denial, and by special pleas of the two and four years statutes of limitation, pleaded voluntary payment, and alleged that the act of 1915 under which the appellee claimed compensation had been repealed, for which reason he was not entitled to recover the 5 per cent. since either the 26th day of August, 1923, or the 21st day of September, 1923.

By supplemental petition the appellee alleged that the county was estopped to plead limitation and voluntary payment in defense, and that the county within the last four years had agreed by order duly entered to pay appellee whatever sum of money might be justly due him.

The case was submitted to a jury on 32 special issues. Based upon the verdict, the court rendered judgment for Raley against Wichita county in the sum of $2,813.71, with 6 per cent. interest from February 7, 1929, and all costs of suit, said amount representing 5 per cent. of the delinquent taxes collected by the appellee from January 1, 1923, to August 26, 1923.

■ The 41st Legislature (1st Called Session) enacted chapter 95, which provides that any person in the state of Texas who formerly served as a duly elected and qualified tax collector of any county while subject in that capacity to the provisions of the Maximum Fee Bill and who during such time collected and paid over to the treasury of such county the fees and commissions provided for in section 3 of chapter 147, Acts of the Reg. Session of the 34th Legislature 1915, or any part of such fees, was authorized to bring suit against such county to collect and recover all such fees and commissions so paid by him. Section 3, chapter 147, referred to, is the law under which Raley in this case is claiming the 5 per cent. commissions upon delinquent taxes collected by him. Section 3 of chapter 95 further provides that, in case the tax collector shall file such suit against the county, no plea of limitation shall be available to such county as a defense, but in such suit and in any cross-action filed by a county against said collector in any such suit, this section further provides that the plea of limitation to such cross-action shall not be available to the collector. Cameron County v. Fox (Tex. Civ. App.) 42 S.W.(2d) 653. This act does not, of course, repeal any statute

of limitation in this state, but simply and effectively denies either the county or the tax collector the right to interpose such plea in an action of this kind.

Therefore we think the trial court should have sustained the exceptions to the county's pleas of limitation.

■ The first section of the act (said chapter 95) gives the collector whose cause of action comes within its terms, the specific right to file his suit for recovery of the commissions in a court of competent jurisdiction in the county where the taxes accrued. In the light of this statute a tax collector whose right of action comes within the terms of section 1 of the act has the right to maintain his suit whether his payment to the county was voluntary or involuntary. It may be conceded that by the common-law rule Raley could not recover because he had voluntarily paid the commissions for which he now sues into the treasury of Wichita county. It is not necessary for us to decide that question, because the provisions of said chapter 95 have the effect of changing the common-law rule in cases of this character. White v. Navarro County (Tex. Civ. App.) 40 S.W.(2d) 868, 869; Limestone County v. Robbins (Tex. Com. App.) 38 S.W.(2d) 580.

■■ Under the provisions of this chapter it is further immaterial whether the commissioners' court of Wichita county or its county judge had entered into any sort of a contract to refund the commissions so paid by Raley, nor does the question of whether the facts and circumstances under which Raley paid the money to the county create a trust relation between the parties become of any importance. The statute in peremptory language gives the collector the right to sue. No form of action is prescribed, and, if the petition sets up the facts, as it does in this case, which bring the cause of action within the terms of the statute, it becomes immaterial whether there was a trust relation, an express promise or an implied promise, or an undertaking of any kind between the parties. We think the effect of chapter 95 gives the collector the absolute right to sue, even though the Act of 1915, § 3, upon which his cause of action is based, had been repealed without a saving clause, before his suit was filed. Acts 1923, 2nd Called Sess., c. 13.

As said by Judge Gallagher in White v. Navarro County, supra: "The conditional right of action conferred on the respective tax collectors by that act became vested when the same became effective."

The repealing act did not take effect until August 21, 1923.

The only remaining question to be considered is whether Raley complied with all the requirements of the law in making out his delinquent tax lists, issuing notices, and fur-

nishing the county's attorneys duplicates of all documents necessary to enable said attorneys to file suits.

In the case of Curtin v. Harris County, 111 Tex. 568, 242 S. W. 444, 447, the Supreme Court sets out the duties imposed upon the tax collector, the performance of which constitutes a condition precedent to his right to recover. That was a suit by Harris county against Curtin, as collector, to recover the moneys retained by him under the act of 1915. It is suggested that, since through the efforts of Raley the stated amount of delinquent taxes was recovered and paid into the treasury of Wichita county, and that the county has since enjoyed the fruits of his labors, it is inequitable to deny him the right to recover the 5 per cent. commissions on the amount so collected simply because a clerk in his office failed to attach the official seal to the notices, or some other requisite of the act had not been fully complied with. This contention appeals to us, and, but for the fact that the Supreme Court has held to the contrary in the Curtin Case, we would sustain the contention. The opinion in the Curtin Case sets out five prerequisites, the performance of which by the tax collector must be shown in order to entitle him to recover.

The jury's findings with reference to this matter in the instant case are as follows:

(4) That the collector each year, 1923, 1924, 1925, prepared and mailed to the addresses of the record owners of lands situated in Wichita county, Tex., a notice showing the amount of taxes appearing delinquent against all such lands according to the delinquent tax records.

(5) That such notices contained a brief description of the land appearing delinquent and the various sums due against such lands for each year. That they appeared to be delinquent according to such records.

(6) That he each year furnished to the county attorney the duplicates of such statements in accordance with the provisions of the law.

(7) That such notices recited that, unless the owner should pay the amount of taxes, interest, penalty, and costs within ninety days from the date of the notices, the county or district attorney would institute suit thereon.

(8) That the collector offered or tendered to the county attorney of Wichita county duplicate copies of all such notices.

(9) That the county attorney of Wichita county requested the collector to retain temporarily said notices.

(10) That said notices were kept by the collector under the supervision, control, and direction and for the benefit of the county attorney.

(11) That said notices did not furnish reliable data sufficient for the county attorney to draw his petition and upon which to base his recovery in court for the taxes delinquent as shown by the delinquent tax records.

(12) That the collector, when there were as many as two years back taxes delinquent, prepared and included same in a delinquent tax record or supplemental report.

■ We think these findings, except the eleventh, show that Raley substantially complied with the statutory requirements, and but for the eleventh finding, to the effect that the notices issued by Raley did not furnish reliable data upon which the county attorney could base his petition, we would affirm the judgment. We strongly incline to the opinion that the eleventh finding is a conclusion of law and is not strictly a finding of fact. It was for the jury to find as facts what data, if any, Raley had furnished, and for the court to determine whether the data so furnished was sufficiently reliable to enable the county attorney to draw his pleadings from an inspection thereof. However, in view of the decision in the Curtin Case and the further holding by the Supreme Court that this court cannot set aside the material finding of a jury and substitute its own findings therefor, we feel constrained to hold that the judgment must be reversed and remanded for another trial, and it is accordingly so ordered.