### H. M. CURTIN, TAX COLLECTOR, v. HARRIS COUNTY ET AL.

#### No. 3162.   Decided June 12, 1922.

(242 S. W., 444.)

**1.—Taxation—Collector—Fees of Office—Poll Tax Receipt.**

The fee allowed the tax collector by section 144 of the Terrill Election Law of 1905 (Revised Statutes, art. 2986)', being ten cents for each poll-tax receipt or certificate of exemption issued, is thereby expressly declared to be for ex-officio services; and for this the collector is not required to account under the Maximum Fee Law of 1913, Revised Statutes, Title 58, Chapter 4. There was no implied repeal of article 2986 by the latter act. Curtin v. Harris County, 203 S. W., 452, approved on this point. (P. 573).

**2.—Tax Collector—Fees of Office—Delinquent Tax Roll.**

Under the Act of April 3, 1915, Laws, 34th Leg., ch. 147, p. 250, the collector is entitled to charge five cents per line for the delinquent tax roll thereby required to be prepared by him (Sec. 3, Vernon's Civ. Stats., Supp., 1918, art. 7688a); but he is not allowed the same fee, nor any charge, for the duplicate of such rolls which he is required also to prepare. Curtin v. Harris County, 203 S. W., 453, approved on this point. (P. 574).

**3.—Tax Collector—Fees of Office—Delinquent Taxes.**

The fees of five cents per line for preparing the delinquent tax roll and of five per cent. on all delinquent taxes collected by him, allowed the tax collector by the Act of April 3, 1915, Laws, 34th Leg., ch. 147, p. 250, Vernon's Civ. Stats., Supp. 1918, art. 7688a, is declared by the statute to be "in addition to the compensation and costs now allowed by law." These, the compensations then allowed by law, were limited by the Maximum Fee Law then in force. The allowance for services required by the delinquent tax law of 1915 was additional compensation for the additional work thereby required and was not to be counted as part of the maximum of fees permitted tho collector by the Maximum Fee Law. (Pp. 574, 575).

**4.—Same—Failure to Perform Duties.**

In order to entitle the collector to retain the commission of five per cent. allowed him for delinquent taxes collected under the Delinquent Tax

Law of 1915, he must perform substantially the services thereby required in addition to preparing the delinquent tax roll, that is; (1) Mail the required notices to the delinquent owners; (2) furnish the county or district attorney copies thereof; (3) also furnish him statement of delinquent taxes assessed against unknown owners. These duties not having been performed in material particulars, the collector is not entitled to this commission. (Pp. 575-

Error to the Court of Civil Appeals for the First District.

The suit was brought by Harris County against Curtin, and the State intervened. The judgment recovered was affirmed in part and in part reversed and rendered by the appellate court (203 S. W., 453), and defendant Curtin obtained writ of error.

*Baker, Botts, Parker & Garwood,* for plaintiff in error.

The trial court erred in rendering judgment in favor of Harris County and against the defendant Curtin for $112.00 commissions retained by the defendant upon poll taxes collected, because under the statutes of the State of Texas then and now in force, he was entitled to this commission.

This poll tax commission is fixed by Art. 2986, Rev. St. of 1911, which article was Section 144 of the Terrell Election Law passed in 1905. That statute provided that collectors, whose salaries are fixed "by what is known as the Fee Bill," shall receive 10 cents for each poll tax receipt, and such fee shall be ex-officio and not accountable under said Fee Bill. The only way by which it may be contended that these poll tax commissions were eliminated by the Maximum Fee Bill is to hold that the amendment of specific articles contained in the title Fees of Office repealed by implication the provisions of Article 2986 contained in the title Elections. It is fundamental, of course, that repeals by implication are not favored. This doctrine was announced by the Supreme Court of Texas in Cole v. State, 170 S. W., 1036, 106 Texas, 472. This is but one of the myriad cases announcing this doctrine. This doctrine is approved by all of the text writers. Sutherland, Stat. Const., sec. 138.

The trial court erred in rendering judgment in favor of Harris County and against the defendant Curtin, for $2529.20 which had theretofore been paid by Harris County to said H. M. Curtin for the preparation of a supplemental delinquent tax roll, because under the Act of 1915 the defendant Curtin was entitled to this five cents per line for the original of said roll; and he having made same and received this sum from the County, the County could not recover it in this action.

The trial court erred in rendering judgment in favor of Harris County and against the defendant Curtin for $2123.94, which sum the defendant Curtin had retained as five per cent upon delinquent taxes other than State taxes collected by him as fees of office during his incumbency in office, because under the Act of 1915, the defendant

Curtin was entitled to retain this five per cent commission upon these delinquent taxes collected, and it was additional compensation to that allowed by the Fee Bill of 1913, and in no way affected or limited by said fee bill.

By the terms of House Bill No. 40 the tax collector is entitled to receive for making up a delinquent tax record in counties were none has theretofore been provided and for preparing every two years a supplement to such record, the sum of 5 cents for each line of yearly delinquencies entered on the record or supplement and 5 cents for each line entered upon the duplicate of such record or supplement. Report and Opinions of Attorney General of Texas, 1914-1916, p. 227. In re Daggett's Est., 9 N. Y. Supp., 652; Commonwealth v. Avery, 14 Bush, 625; Stringer v. Franklin County, 123 S. W., 1171.

In order for appellant Curtin to be entitled to retain the amounts claimed as commissions for the collection of delinquent taxes, substantial compliance with the duties imposed by House Bill No. 40 is sufficient.

As House Bill No. 40 does not provide for the form of notice or form of statement required by it to be furnished or approved by the Comptroller, it was immaterial whether the form of notice used by appellant in notifying delinquent taxpayers was one approved by the Comptroller or not, provided said notice complied substantially with the requirements of the law.

The appellant Curtin, in preparing the delinquent records required by House Bill No. 40, was not required to prepare delinquent records covering the years 1885 to 1913, inclusive, as the Stewart Roll satisfied all the requirements of law and had the appellant prepared such an original record, he would not have been entitled to any compensation for its preparation.

The trial court erred in refusing the defendant Curtin judgment in his cross-action against Harris County for $2,529.20, which represented 5 cents per line for the duplicate supplemental delinquent tax roll prepared by the defendant Curtin under the Act of 1915.

*John H. Crooker,* Criminal Dist. Atty., Harris County, and *Fisher, Campbell & Ammerman,* for Harris County.

The phrase, "fees of all kinds," embraces every kind of compensation allowed by law, to officers, unless excepted by some provision of the statute. The exceptions are so definite that by implication all fees not mentioned in the exceptions are excluded therefrom, and are thereby included in the requirements of the act, and sections 2 and 3 of House Bill No. 40 (Acts of 1915, C. 147, p. 250) create no exceptions in favor of the fees therein provided for. Ellis County v. Thompson, 95 Texas, 22, 66 S. W., 49; Navarro County v. Howard, 129 S. W., 857 (Writ of Error denied); Lattimore v. Tarrant County, 124

S. W., 205; Brown v. City of Amarillo, 180 S. W., 654; Tarrant County v. Butler, 35 Texas Civ. App., 421, 80 S. W., 656; City of Austin v. Johns, 62 Texas, 179; Finley v. Territory, 73 Pac., 273. This case contains exhaustive compilation of fee cases.

The mere passage of an act by legislative authority authorizing and permitting an officer to charge, collect and receive compensation for new or additional service is not sufficient to take such compensation, when so allowed, out of the provisions of Article 3881, 3882, 3883, 3888 and 3889. Acts of 1915, Chapter 147, p. 250; Articles 3881, 3883 and 3889, Vernon's Sayles' Civil Statutes.

Under section 3 of House Bill No. 40 (Acts 1915, C. 147, p. 250) Tax Collectors are not entitled to 5 cents per line for the preparation of the duplicate (carbon copy) of the delinquent tax roll and supplement thereto, but are required to prepare duplicate copies of same, and for their services are allowed a total of 5 cents per line for such roll and duplicate. Sherman County v. Ross, 197 S. W., 1055; Dwyer v. City of Brenham, 70 Texas, 30, 7 S. W., 598; Acts of 1915, ch. 147, sec. 3, p. 252.

Article 2986, Revised Civil Statutes, which was Sec. 144 of Terrell Election Law of 1905, is so inconsistent with Articles 3881, 3888 and 3894, Revised Civil Statutes as amended by the Legislature in 1913, that the two can not be harmonized so as to stand together, hence the latter will prevail, and the former will be repealed by necessary implication.

Article 3924, Revised Civil Statutes, should not be construed to limit the "fees of all kinds" mentioned in Articles 3881 to 3894, Revised Civil Statutes. St. Louis S. W. Ry. Co. v. Hill & Morris, 97 Texas, 506; Hartford Fire Ins. Co. v. Walker, 94 Texas, 473; Fischer v. Simon, 95 Texas, 234.

*B. F. Looney,* Attorney General, and *J. C. Wall* and *G. B. Smedley,* assistants, for State of Texas.

The Act of 1915, commonly known as House bill No. 40, imposed additional duties upon county tax collectors, prescribing in detail the method of their performance, making their performance mandatory and fixing heavy penalties for failure to perform them. For the performance of these additional duties an additional compensation of five per cent commissions on delinquent taxes collected was allowed; and a tax collector is not entitled to such additional compensation unless and until he has performed all such additional duties. Secs. 1, 2, 3 and 4 of Ch. 147, General Laws, Regular Session 34th Leg. (House bill No. 40); State v. Wolfe, 51 S. W., 657; Houston Oil Co. v. State, 141 S. W., 805; State v. Seidell, 194 S. W., 1118; Chambers v. Robison, 107 Texas, 315.

Because the Stewart record had not been approved by the Comptroller and was not made as required by law, it was the duty of appel-

lant, in order to earn the additional commissions given by House bill No. 40, to prepare a delinquent record for the years 1885 to 1913. Rev. Stats., 1911, Art. 7685.

The mere mailing of a postal card notice to a small percentage of the delinquent taxpayers is not a substantial performance of all the duties imposed upon the tax collector by House bill No. 40.

MR. JUSTICE PIERSON delivered the opinion of the court.

For a comprehensive statement of the case, we take the following from the opinion of the Court of Civil Appeals:

"Harris county, through its district attorney and county attorney, filed this suit against H. M. Curtin, formerly tax collector of Harris county, for the recovery of certain moneys which were alleged to be due by Mr. Curtin as excess fees of office. The state of Texas, through the Attorney General, intervened, claiming a portion of these moneys to be due the state.

"Mr. Curtin became tax collector of Harris county in April, 1917, for the purpose of filling an unexpired term, and held the office from the date of his appointment until November of the same year. The specific items involved in the litigation are as follows:

"First. Curtin retained a 10-cent fee each for the issuance of poll tax receipts, as provided by section 144 of the Terrell Election Law. The county contends that that section of the Terrell Election Law was repealed and abrogated by the fee bill of 1913, that therefore Curtin was not entitled to retain this commission for issuing poll tax receipts. The amount of this item is $112.

"Second. Curtin prepared a supplemental delinquent tax roll for the county, under the act of 1915 (House Bill No. 40), and the county paid him therefor 5 cents per line, issuing him in payment a voucher on the county's general funds for $2,529.20. The county now contends that it should recover this sum from Curtin, because, under the Maximum Fee Bill Act of 1913, he could only retain $4,250 per annum as fees of office, and that therefore this sum paid him by the county for making up the delinquent tax roll should be returned to the county as excess fees.

"Third. Curtin retained 5 per cent. for the collection of delinquent taxes due the county and subdivisions of the county. These taxes were retained by him under section 2 of the act of 1915, allowing collectors five per cent. for collecting delinquent taxes. The county contends that this commission should be returned to it as excess fees of office; that it was not the intention of the act of 1915 to allow the fees provided therein in addition to the maximum compensation allowed by the fee bill. The amount of this 5 per cent. commission for collecting delinquent taxes claimed by Harris county is $2,123.94.

"Fourth. Curtin collected certain delinquent taxes due the state of Texas, upon which he retained a 5 per cent. commission. The state

of Texas intervened, claiming that these commissions were wrongfully retained by Mr. Curtin, on the theory that he had not complied with the requirements of the act of 1915 in many respects, under which statute he claimed the right to retain these commissions, and because of his noncompliance the commissions could not be charged by him. The amount of the 5 per cent. commissions involved in the controversy with the state is $1,174.97. Harris county made the contention that, if these commissions were really earned under the act of 1915, that they should be recovered by the county as excess fees. The trial court held that they were not earned in the first instance, that therefore Curtin was not entitled to retain them, and that the state was entitled to judgment for the amount of these commissions that had been retained.

"Fifth. When Curtin prepared the delinquent tax roll for which the county paid him $2,529.20, he prepared at the same time the duplicate rolls required by the statute, which were filed with the comptroller, and he presented his bill to the county for 5 cents per line for the original and duplicate rolls. The county paid him 5 cents per line for the original roll, and this is the sum for which it recovered judgment as excess fees, but declined to pay him 5 cents per line for the duplicate roll.

"Curtin, in a cross-action, sought judgment against the county for this 5 cents per line for the duplicate roll, the amount involved in this cross-action being $2,529.20."

Thus it will be seen that there are five distinct issues or causes upon which recovery is sought.

The trial court found against plaintiff in error on all issues, as follows: That the $112 for issuing poll tax receipts, the 5 cents per line for making up delinquent records, and the 5 per cent. additional compensation for collecting delinquent taxes were to be accounted for under the Maximum Fee Bill; that he had not substantially complied with the requirements of the act of 1915, and therefore had not earned the additional compensation on the collection of delinquent taxes; and that he was not entitled to charge 5 cents per line for the duplicate of the delinquent roll.

The Court of Civil Appeals approved all the holdings of the trial court except as to the $112 for issuing poll tax receipts. As to this, it reversed the trial court and rendered judgment for plaintiff in error.

We think the Court of Civil Appeals correctly held that the fee of 10 cents for each poll tax receipt and certificate of exemption issued by the tax collector is, as provided in the act of 1905, "ex officio and not accountable under said fee bill." The statute is too positive and too explicit for us to hold that it was repealed by implication by a subsequent statute whose terms, though comprehensive, yet are general and make no reference to it. Curtin v. Harris County at al., 203 S. W., 453.

Also, we approve the holding of the Court of Civil Appeals in this case to the effect that plaintiff in error is not entitled under the statute to collect 5 cents per line for the duplicate delinquent roll. Curtin v. Harris County et al., 203 S. W., 453; Sherman County v. Ross, 197 S. W., 1055.

We will now consider and dispose of the other issues, numbered 2, 3, and 4, in the order named, however considering Nos. 2 and 3 together.

House Bill No. 40, Acts of 1915, after imposing new, important, and onerous duties upon the county tax collector, and as inducement for the thorough and proper performance of those duties, which performance it also made mandatory, in section 3 provided:

"The tax collector shall, in addition to the compensation and costs now allowed by law, be entitled for making up the delinquent record or supplements thereto where necessary under this act the sum of 5 cents for each and every line of yearly delinquencies entered on said delinquent record or supplement, such compensation to be paid out of the general fund of the county upon the completion of said record or supplement. The tax collector shall also receive a commission of 5 per cent. on the amount of all delinquent taxes collected in addition to the commissions now allowed him by law." Vernon's Ann. Civ. St. Supp. 1918, art. 7688a.

We can get the legislative intent only through the language it used. At the time this law was enacted (1915) the Maximum Fee Law was in full force and effect, having been enacted at the preceding session. It must have enacted this provision with the maximum fees allowed to tax collectors in mind, and yet it did not limit this additional compensation to the amount named in the Maximum Fee Bill, but said that this compensation was in addition to the compensation now allowed by law. This act was passed after the Maximum Fee Bill, and the Legislature was clearly within its powers to increase the compensation of tax collectors, in view of additional or important services, if it saw fit to do so.

If the Maximum Fee Bill had been passed after this act of 1915, the question might be different. The terms of the Maximum Fee Bill of 1913 are very explicit and very comprehensive, and the interpretation placed upon its provisions by the Court of Civil Appeals is eminently correct, as applied to any and all fees of office not specifically excepted from its application by the Legislature itself. But this act of 1915 comes afterwards, and its language is sufficiently clear that we would not feel justified in holding it did not mean to provide additional compensation to that provided for by the Maximum Fee Bill itself.

If the Legislature had merely intended to fix fees that may be allowed the tax collector along with other fees and charges to go into the making up of his maximum salary, it would likely have simply

said, as it did in many other instances, that "the tax collector shall be entitled to," or "the officer shall be allowed to retain," or "the following amounts shall be allowed," etc.   In those instances this court has held that the amounts received thereunder came within the comprehensive provisions of the Maximum Fee Law.   But the Legislature expressly provides that, "in addition to the compensation and costs now allowed by law," the collector shall be entitled to those sums.

The language of the bill as quoted is practically tantamount to saying, "in addition to the compensation and costs now allowed by the Maximum Fee Bill of 1913."   Therefore, the 5 cents per line for making up the delinquent rolls, and the 5 per cent. commission for collecting delinquent taxes under the act of 1915, before it was amended in 1919, are not to be accounted for under the Maximum Fee Bill. The judgments of the district court and of the Court of Civil Appeals are reversed, and rendered in favor of plaintiff in error as to the $2,529.20 collected and retained by him for making up the delinquent tax rolls for the years 1914 and 1915.

The proper disposition of the fourth issue is more difficult.   Under the purpose and provisions of the act of 1915, did plaintiff in error so substantially comply with it as to entitle him to this 5 per cent. additional compensation for collecting the delinquent taxes?

The able brief of the state on this issue furnishes us an accurate review of the statutory law leading up to the enactment of House Bill No. 40 in 1915, and clearly analyzes the purposes for which it was passed.

From a study of the statutes as outlined in said brief, together with the emphatic provisions of the act of 1915, and an analysis of the agreed facts relating to plaintiff in error's performance of its requirements, we have concluded that plaintiff in error did not substantially comply therewith, and that the district court and Court of Civil Appeals were correct in so holding.   As pointed out by appellee, the state, what is known as the Colquitt Act was enacted in 1895, and re-enacted in 1897.   Prior thereto the records of the various counties of the state, with reference to delinquent taxes, were incomplete and defective, and the state and the counties had lost, and were losing, a large portion of their revenues, and there was uncertainty and confusion in reference thereto.

By that act it was made the duty of the commissioners' court to cause to be prepared by the tax collectors a delinquent tax record showing all lands, lots, etc., delinquent since the 1st day of January, 1885.

After the preparation and publication of the delinquent tax record, it was made the duty of the county or district attorney to file suit for collection of delinquent taxes.   While these duties were imposed upon the tax collector and the county attorney, no penalties were imposed for failure to perform them.   The result was, even though compensa-

tion was provided for these services and for collecting delinquent taxes, in many counties, of the state the services were not performed, and the collection of delinquent taxes still was neglected.

In 1905 the Legislature passed an act by which the commissioners' court of any county was authorized to employ any person to make up this delinquent record and to prosecute to collection the delinquent taxes. This law also failed to bring satisfactory results, and the problem of establishing an accurate and dependable system for handling the delinquent tax problem was still before the state and the counties thereof.

In order to correct this continuous and ever-recurring difficulty, the act of 1915 was passed. It provided for ample and additional compensation to that already provided by law, and, in order to attain its ends, made its requirements mandatory and assessed severe penalties for failure to meet its requirements.

Plaintiff in error admits that, if he did not substantially comply with its requirements in regard to his collection of the delinquent taxes in question, he is not entitled to the commission upon the amounts collected.

In disclosing the purpose of the act and exactions contained in the act, its caption and the emergency clause are very significant. They read as follows:

"An act making it the duty of tax collectors to prepare and mail notices and statements of delinquent taxes to the owners of real estate; prescribing the time in which such notices or statements shall be mailed and the manner in which they shall be prepared; providing for the perfecting of the delinquent tax records of the various counties, and making it the duty of the tax collector to prepare such records in certain instances together with supplements thereto; making it the duty of the county and district attorneys to file and institute suits for the collection of delinquent taxes; providing for the issuance of redemption receipts and other statements by tax collectors and for the approval of tax records by the commissioners' court and the Comptroller of Public Accounts; providing reasonable compensation for the additional duties prescribed in this act for county officers; making the provisions of this act mandatory; repealing all laws and parts of laws in conflict herewith, and declaring an emergency. . . .

"Sec. 6. The fact that the delinquent tax records of this state are in bad condition in many counties, and that many county officials have failed or refused to comply with the law in collection of delinquent taxes, and the fact that innocent purchasers are often embarrassed by delinquent tax claims of which they have had no notice, that millions of dollars are outstanding in taxes in this state which ought to be collected as speedily as possible, create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended in

order that this act may take effect from and after its passage, and it is so enacted."

Section 4 of the act in part reads as follows:

"The duties prescribed in this act for the county tax collector, county and district attorneys and other officers, state and county, are hereby declared to be mandatory and shall not be construed as merely directory, and any county or state official who shall fail or refuse to perform the duties herein set out for him to perform shall be guilty of a misdemeanor, and shall be fined in any sum not less than $100 nor more than $1,000, and in addition thereto shall be subject to removal from office."

The following additional duties are imposed upon the tax·collector by the act:

(1) To mail to every record owner of lands or lots notice of delinquent taxes. The section provides also that, in addition to a brief description of the delinquent real estate, there shall be shown in the notice the "various sums or amounts due against such lands or lots for each year."

(2) To furnish to the county. or district attorney duplicates of all the notices mailed to the record owners of delinquent lands and lots.

(3) To furnish to the county or district attorneys similar statements as to the taxes delinquent on lands or lots appearing on the records in the name of "unknown" or "unknown owners," or in the names of persons whose correct address the tax collector is unable to ascertain, or in lieu of such statements, lists of lands, and lots delinquent against unknown owners.

(4) To furnish on demand statements of delinquent taxes with reference to any lot or tract of land.

(5) To make tax records, or supplements to the delinquent tax records, whenever there shall be as many as two years of back taxes not included in a delinquent tax record, which has been filed in the office of the comptroller and approved by him.

The plaintiff in error made a delinquent tax record for the years 1914 and 1915, for which he retained the 5 cents per line. Out of a total of about 25,000 delinquent tax payers,· he sent notices to only about 5,500. The notice that he sent out failed to comply with the requirements in some important particulars, especially in that it did not give the "various sums or amounts due against such lands or lots for each year." Also, it failed to warn the delinquent that suit would be filed in 90 days.

He·did not furnish the district attorney of Harris county duplicates of the notices that he did mail out to the record owners of delinquent lands and lots. He did furnish the district attorney with a newspaper copy of the delinquent tax advertisements for the years 1914 and 1915. The law contemplates that notices to be sent out and the duplicates thereof should furnish reliable data, sufficient for the district attorney

to draw his petition and upon which to base a recovery in court for the taxes delinquent. He did not furnish the district attorney with statements, or, in lieu thereof, lists of delinquent lands assessed against unknown owners.

Thus it appears that plaintiff in error failed to do the things most vital and of most importance to the county and state and for which this "additional" compensation was provided; and in doing the things he did, he failed to do them so as to render the service valuable to the county and state other than the getting in of the amounts of delinquent taxes actually collected by him.

The judgment of the Court of Civil Appeals is reversed, and rendered for plaintiff in error as to the $2,529.20, collected and retained by him for making up the delinquent tax rolls. In all other respects, it is affirmed.

CURETON, C. J., not sitting.